IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:21-CR-3075 |
| vs. | MEMORANDUM AND ORDER (TENTATIVE FINDINGS) |
| TRISHA A. HAVEL, | |
| Defendant. | |

The Court has received the revised presentence investigation report and addendum in this case. The defendant has objected to the presentence report, *see* filing 39 (citing filing 36), and moved for a downward departure or variance, *see* filing 42, *see also* filing 43.

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory guidelines respectful consideration within the context of each individual case and will filter the guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

(c)     impose upon the United States the burden of proof on all guidelines enhancements;

(d)     impose upon the defendant the burden of proof on all guidelines mitigators;

(e)     depart from the advisory guidelines, if appropriate, using pre-*Booker* departure theory; and

(f)     in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory guidelines, again without affording the guidelines any particular or "substantial" weight.

2.     The defendant has objected to the presentence report in several respects. Filing 36. The defendant has also moved for a downward departure based on overstated criminal history, as well as a downward variance based on her circumstances and the circumstances of the offense. Filing 42. Finally, the defendant also seeks a downward variance based on criticism of the methamphetamine guidelines. Filing 43.

*Objections to the Presentence Report*

(a)     First, the defendant objects to the drug quantity calculation including 113.4 grams of methamphetamine mixture attributed to the defendant by statements to law enforcement from Jason Truhlicka, the defendant's roommate. Filing 36 at 1. Specifically, she objects to the provenance of that information. She also objects based on the date of the offense specified in the information—possession of methamphetamine with

intent to distribute "[o]n or about March 30, 2021." Filing 36 at 1; *see* filing 1 at 1.

The Court agrees with the defendant that (at least from the presentence report) the undated attribution of 113.4 grams of methamphetamine mixture to the defendant by Truhlicka is difficult to connect to the offense. The government suggests that it's relevant conduct based on U.S.S.G. § 1B1.3(a)(1)(B), which defines the scope of relevant conduct for jointly undertaken criminal activity. Filing 46 at 4. But the presentence report describes Truhlicka as the defendant's "roommate who helped out with her son," who performed household chores and was paid in methamphetamine. It's far from clear, based on that description, that the defendant's drug distribution was a joint undertaking with Truhlicka, and the presentence report's failure to say *when* Truhlicka supposedly witnessed the defendant's possession of 113.4 grams of methamphetamine mixture only illustrates the problem.[1]

But in any event, when the defendant objects, it's the government's burden to prove drug quantity by a preponderance of the evidence. *United States v. Young*, 689 F.3d 941, 945 (8th Cir. 2012). Accordingly, the Court will resolve this issue on the evidence at sentencing.

(b)  Second, the defendant objects to the calculation of the base offense level based on actual methamphetamine, instead of the methamphetamine

---

[1] Although the defendant doesn't object based on double-counting, it's even hard to see from the presentence report what would exclude the possibility that some of that 113.4 grams could have also been part of the quantities of methamphetamine found in the defendant's residence when it was searched.

mixture with which she was actually charged. Filing 36 at 1-2; *see* filing 1. The defendant argues that she wasn't "put on notice that she was being charged with methamphetamine (actual)." Filing 36 at 2.

But of course, she wasn't and *isn't* charged with methamphetamine (actual). The guidelines are quite clear that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1 cmt. n.5. The Court's tentative finding is that the defendant's objection in this regard is without merit.[2]

(c)     Next, the defendant argues—"[a]lthough not in terms of an objection"—that she's met the requirements for "safety valve" consideration. Filing 36 at 2. The Court notes—as does the presentence report—that although the defendant doesn't meet the criteria for a safety valve departure under the guidelines pursuant to § 2D1.1(b)(18) and U.S.S.G. § 5C1.2(a) because of her criminal history (more on that later), she does appear to meet the criteria for the statutory safety valve pursuant to § 3553(f), permitting the Court to vary below the statutory mandatory minimum. With that in mind, the Court will resolve this issue at sentencing.

---

[2] Below, the Court will address use of the guidelines for methamphetamine (actual) and methamphetamine mixture in the context of the defendant's motion for variance. *See* filing 43. But that's a separate matter. Variance is a question for the Court, but the probation officer's obligation in completing the presentence report is to calculate the guidelines range as the guidelines are written, and here the guidelines themselves clearly provide that methamphetamine (actual) should be used to determine the base offense level where the evidence establishes that methamphetamine (actual) was part of the offense conduct or relevant conduct. *See* § 2D1.1 cmt. n.5.

(d)   Finally, the defendant objects to her placement in criminal history category II, and suggests that she is "more appropriately placed in Criminal History Category I." Filing 36 at 3. The Court notes, however, that the defendant's argument is better framed as urging departure or variance, because she doesn't identify any error in the presentence report's application of the guidelines to her prior record to determine her criminal history points. *See* filing 36 at 3. Accordingly, the Court finds to the extent this argument is framed as an *objection*, it is without merit.

*Motion for Departure*

(e)   The defendant requests a downward departure based on U.S.S.G. § 4A1.3(b)(1), arguing that her criminal history category overrepresents the seriousness of her prior criminal conduct. Filing 42 at 2-3. The defendant landed in criminal history category II based on two criminal history points—one each for two convictions for shoplifting from Walmart. The defendant claims that "[t]wo points were assessed for convictions for essentially the same charged act." Filing 42 at 3.

But while the offense conduct in each case was similar, the two crimes were nearly two years apart. The Court's not persuaded that assessing each with a single criminal history point is overrepresenting much of anything.[3] *Cf. United States v. Johnson*, 812 F.3d 714, 715 (8th Cir. 2016)

---

[3] If anything, it bears considering which scenario is more plausible: that the defendant decided on only two occasions, two years apart, to try bagging items at the Walmart self-check that she hadn't scanned—or that she did so on other occasions and only got caught twice. The Court's not considering an upward variance or anything of that kind—just noting that perhaps, the true scope of the defendant's criminal history might not be a topic she wants thoroughly explored.

(affirming denial of downward variance where defendant's two prior convictions were closely related). Nor is the Court inclined to hold that a defendant is entitled to a departure just because their criminal history includes repeatedly committing the same crime. Accordingly, while the Court will finally resolve this issue at sentencing, the Court's tentative finding is that departure on this basis is unwarranted.

*Motion for Variance*

(f) First, the defendant argues for a downward variance based on her personal circumstances, the circumstances of the offense, and the § 3553(a) factors. Filing 42. The Court will resolve that motion at sentencing.

(g) Finally, the defendant separately argues for what would effectively be a downward variance: She asks the Court to reject the distinction made in the sentencing guidelines between methamphetamine (actual) and methamphetamine mixture as it relates to determination of the base offense level. Filing 43. The Court agrees.

A sentence within the guidelines range is not presumably reasonable; rather, the Court makes an individualized assessment based on the facts of each case. *Gall v. United States,* 552 U.S. 38, 50 (2007). If the Court finds a variance is appropriate, it must consider the extent of the deviation and ensure that there is a correspondingly compelling justification. *Id.* Ultimately, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2).

In many cases, the guidelines sentencing range will roughly approximate a sentence that would achieve the objectives of § 3553(a). *Kimbrough v. United States,* 552 U.S. 85, 109 (2007). These ranges are typically the product of the Sentencing Commission's careful study, and are "based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall,* 552 U.S. at 46. But that's not true in all cases, and in those circumstances, the Court may vary up or down on a case-by-case basis, after making an individualized determination that the guidelines would yield an excessive (or unduly lenient) sentence. *Spears v. United States,* 555 U.S. 261, 265 (2009) (per curiam).

The Court can also go further than that. The Court has discretion to categorically reject a guideline based on policy grounds, when the Court finds that the guideline consistently yields sentences greater than necessary to achieve the purposes of § 3553(a). *See Kimbrough*, 552 U.S. at 101-02; *see also Spears*, 555 U.S. at 265-66. The *Kimbrough* court explained that

> in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. The sentencing judge, on the other hand, has greater familiarity with the individual case and the individual defendant before him than the Commission or the appeals court. He is therefore in a superior position to find facts and judge their import under § 3553(a) in each particular case. In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract

> greatest respect when the sentencing judge finds a particular case outside the "heartland" to which the Commission intends individual Guidelines to apply. On the other hand, while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case.

552 U.S. at 574-75 (cleaned up). But the Court's discretion to vary from the guidelines on policy grounds, even in a mine-run case, is broadest when the guidelines at issue "do not exemplify the Commission's exercise of its characteristic institutional role." *Id.* at 575.

With those background principles in mind, the Court turns to the specific argument advanced here: that the 10-to-1 ratio treating 1 gram of methamphetamine (actual) as the equivalent of 10 grams of methamphetamine mixture, *see* § 2D1.1(c)(1)-(12), generally results in sentencing calculations inconsistent with § 3553(a). An impressive and growing number of courts have concluded that it does. *E.g.*, *United States v. Van Long*, No. 4:22-cr-26, slip op. at 4 (D. Idaho Feb. 2, 2023); *United States v. Robinson*, No. 3:21-cr-14, 2022 WL 17904534, at *3 (S.D. Miss. Dec. 23, 2022); *United States v. Carrillo*, 440 F. Supp. 3d 1148, 1154-55 (E.D. Cal. 2020); *United States v. Moreno*, 583 F. Supp. 3d 739, 745 (W.D. Va. 2019); *United States v. Johnson*, 379 F. Supp. 3d 1213, 1226 (M.D. Ala. 2019); *United States v. Rodriguez*, 382 F. Supp. 3d 892, 897-98 (D. Alaska 2019); *United States v. Bean*, 371 F. Supp. 3d 46, 55-56 (D.N.H. 2019); *United States v. Pereda*, No. 1:18-cr-228, 2019 WL 463027, at *4

(D. Colo. Feb. 6, 2019); *United States v. Ferguson*, No. 0:17-cr-204, 2018 WL 3682509, at *4 (D. Minn. Aug. 2, 2018); *United States v. Harry*, 313 F. Supp. 3d 969, 974 (N.D. Iowa 2018); *United States v. Nawanna*, 321 F. Supp. 3d 943, 955 (N.D. Iowa 2018); *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1257 (D.N.M. 2017). *But see United States v. Kaufman*, No. 2:18-cr-36, 2019 WL 3220571, at *3 (D. Me. July 17, 2019). That holding is premised on four primary grounds:

- The 10-to-1 actual-to-mixture ratio isn't grounded in any empirical evidence generated by the Sentencing Commission,

- methamphetamine purity is no longer a useful proxy—if, indeed, it ever was—for the relative culpability of a defendant,

- the 10-to-1 ratio creates unwarranted sentencing disparities among defendants convicted of methamphetamine crimes, and

- the multiplier applied to defendants convicted of crimes involving methamphetamine (actual) creates unwarranted sentencing disparities between those defendants and those convicted of other drug crimes.

First, it's well-established that the drug trafficking guidelines don't reflect the Sentencing Commission's exercise of its institutional role and collection of empirical data—rather, the Commission chose to anchor the drug trafficking guidelines to the mandatory minimum sentences that Congress established for drug offenses. *Gall*, 552 U.S. at 46 n.2; *see Kimbrough*, 552 U.S. at 96-97. The 10-to-1 ratio appears to be grounded in nothing more than the presence of the same ratio in the Anti-Drug Abuse Act of 1988. *See United States v. Hayes*, 948 F. Supp. 2d 1009,

1023 (N.D. Iowa 2013); *see also Van Long*, slip op. at 2; *Moreno*, 583 F. Supp. 3d at 742; *cf. Bean*, 371 F. Supp. 3d at 51.

Second, the apparent rationale for imposing additional punishment based on drug purity is that

> [t]he purity of the controlled substance . . . is probative of the defendant's role or position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs. As large quantities are normally associated with high purities, this factor is particularly relevant where smaller quantities are involved.

§ 2D1.1 cmt. n.27(C); *see Robinson*, 2022 WL 17904534, at *1; *Carrillo*, 440 F. Supp. 3d at 1154; *Johnson*, 379 F. Supp. 3d at 1223; *Bean*, 371 F. Supp. 3d at 52; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1256; *see also Nawanna*, 321 F. Supp. 3d at 951; *cf. United States v. Trejo*, 624 F. App'x 709, 714 (11th Cir. 2015).

Perhaps that was true of methamphetamine at some point, when the paradigmatic methamphetamine conspiracy involved people diligently harvesting pseudoephedrine to cook in a secluded trailer. But it's not true in a world in which most of the methamphetamine that this Court sees was produced on an industrial scale and smuggled into the United States. The fact is—and there doesn't appear to be much disagreement

on this point—that nearly all of the methamphetamine that's actually *tested* in relation to federal drug crimes is highly pure. That fact is supported by both empirical data and the anecdotal experience of every federal district judge to opine on the question—even those who disagree about whether varying from the guidelines is warranted. *See Van Long*, slip op. at 2; *Robinson*, 2022 WL 17904534, at \*3; *Carillo*, 440 F. Supp. 3d at 1154; *Moreno*, 583 F. Supp. 3d at 743-44; *Kaufman*, 2019 WL 3220571, at \*2; *Johnson*, 379 F. Supp. 3d at 1224-25; *Rodriguez*, 382 F. Supp. 3d at 896; *Bean*, 371 F. Supp. 3d at 52-53; *Pereda*, 2019 WL 463027, at \*4; *Ferguson*, 2018 WL 3682509, at \*4; *Nawanna*, 321 F. Supp. 3d at 951; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1255-56. In other words, the ready availability of methamphetamine (actual) to everyone in the chain of distribution, from the kingpin to the mule to the end user, has utterly severed any connection between the purity of the drug and the defendant's position in the criminal enterprise—and as a result, contrary to § 3553(a), the guideline is treating all of them like kingpins.

But that doesn't mean everyone is being treated alike. Instead, differing outcomes are driven by whether or not methamphetamine is tested for purity in the first place. And as a multitude of courts have again observed, whether or not testing occurs for some or all of the methamphetamine for which a defendant is being held responsible is largely dependent on arbitrary conditions that have no bearing on the § 3553(a) factors which *should* be driving sentencing decisions. *See Van Long*, slip op. at 3; *Moreno*, 583 F. Supp. 3d at 744; *Rodriguez*, 382 F. Supp. 3d at 897; *Pereda*, 2019 WL 463027, at \*5; *Ferguson*, 2018 WL 3682509, at \*4; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1256. The *Pereda* court, for instance, noted that testing decisions could hinge on whether

some or all of the drugs were seized, how busy testing labs are, the speed of a defendant's guilty plea relative to the availability of testing, and whether the prosecution began with a federal investigation or a state agency that didn't complete the testing in a timely manner. 2019 WL 463027, at *5. And that has been this Court's experience also. Most of those factors are beyond a defendant's control, and none of them should result in additional months or years of imprisonment.

That, however, raises the question of which direction the Court should move to alleviate the discrepancy. After all, if nearly all methamphetamine is pure, then it might be reasonable to solve the problem by assuming that untested methamphetamine was also pure. *See Kaufman*, 2019 WL 3220571, at *2. And there is, realistically, *some* relationship between the purity of a drug and the harm that drug may do on the street. *See id.*; *see also Van Long*, slip op. at 3-4.

But that would perpetuate the other problem with the methamphetamine guidelines: the unjustifiably harsh treatment of methamphetamine (actual) *vis-à-vis* other controlled substances. *See Moreno,* 583 F. Supp. 3d at 744; *Bean,* 371 F. Supp. 3d at 53-54; *Pereda,* 2019 WL 463027, at *5; *Harry,* 313 F. Supp. 3d at 972-73. By way of illustration: Under § 2D1.1(c)(3)-(8), 500 grams of methamphetamine (actual) merit a base offense 34, while 500 grams of other common street drugs result in base offense levels of 30 (fentanyl and crack cocaine), 26 (heroin) or 24 (cocaine). Assuming no criminal history and no other adjustments to the offense level, that would mean that a defendant with 500 grams of methamphetamine (actual) would face a guidelines sentence of 151 to 188 months, while a defendant with 500 grams of

fentanyl or crack would face only 97 to 121 months imprisonment. *See* U.S.S.G. § Ch. 5, Pt. A. Heroin and cocaine would be even lower. *See id*. The Court's unaware of any empirical basis to conclude that methamphetamine (actual) demands that much more punishment per gram than these other street drugs.

Rather, the most plausible interpretation of the guidelines is that methamphetamine *mixture* was assumed to be the mine-run drug in the "heartland" of the guidelines, and that the enhanced penalties for methamphetamine (actual) reflect the considerations regarding purity that the Court rejected above. And that's consistent with the guidelines range for 500 grams of methamphetamine mixture: base offense level 30, the same as fentanyl or crack cocaine. § 2D1.1(c)(5). Of course, that's just an assumption—but it reflects the Court's independent conclusion (based on years of real-world experience) that the guidelines for methamphetamine mixture will, in *all* methamphetamine cases, more closely approximate a sentence that would achieve the objectives of § 3553(a). *See Kimbrough,* 552 U.S. at 109.[4] And given the base offense

---

[4] This is also the solution that most courts have taken. *See Robinson*, 2022 WL 17904534, at \*3; *Carillo,* 440 F. Supp. 3d at 1154-55; *Moreno,* 583 F. Supp. 3d at 744; *Johnson,* 379 F. Supp. 3d at 1229; *Bean,* 371 F. Supp. 3d at 55-56; *Pereda,* 2019 WL 463027, at \*5-6; *Ferguson,* 2018 WL 3682509, at \*4; *Harry,* 313 F. Supp. 3d at 974; *Ibarra-Sandoval,* 265 F. Supp. 3d at 1256; *cf. Nawanna,* 321 F. Supp. 3d at 956. The Court has considered whether the better approach would be to simply vary on a case-by-case basis, as some other courts have done. *See Van Long*, slip op. at 3-4; *Rodriguez,* 382 F. Supp. 3d at 898. But in *Spears*, the Supreme Court said that was an "[un]acceptable sentencing practice," describing that approach to policy-based variance as "masking . . . categorical policy disagreements as 'individualized determinations,'" and characterizing it as "institutional subterfuge." 555 U.S. at 266. **\*Rather, consistently applying the guidelines for methamphetamine mixture in**

levels associated with even methamphetamine mixture, that "will hardly constitute a windfall to defendants in methamphetamine cases." *Harry,* 313 F. Supp. 3d at 974; *accord Moreno,* 583 F. Supp. 3d at 745; *Pereda,* 2019 WL 463027, at \*5. Rather, it will result in methamphetamine being treated about the same as fentanyl or crack cocaine, which as a general matter better reflects the present state of the illicit drug industry.

Accordingly, the Court will begin by determining the sentencing guidelines range—as it's required to do—by reference to the base offense level dictated by the guidelines as written. *See Gall,* 552 U.S. at 50. But by way of variance, the Court will follow that with a *recalculation* of the guidelines range based on the total weight of methamphetamine and the guidelines for a methamphetamine mixture—*including, of course, any upward or downward adjustments warranted by the case.* In the absence of methamphetamine purity as a useful proxy for culpability, the Court will be particularly mindful of the adjustments for the defendant's role in the offense. *See* U.S.S.G. § 3B1.1 *et seq.* And then, the Court will consider all of the § 3553(a) factors to make an individualized assessment of the case based on the facts presented. *See Gall,* 552 U.S. at 50.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

---

**mine-run cases, and varying when warranted by the individual facts of a case, is more transparent, easier for the Court and the parties to navigate predictably and fairly,** *and* **more intellectually honest.** *See Bean,* 371 F. Supp. 3d at 55.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 10th day of February, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge